JOSEPH B. HUMPHREYS, AUDITOR, ETC. v. THE SAFE DEPOSIT·
COMPANY.

Under the tax law of 1859 and its amendments, where the district assessor
    undervalued a lot or tract of real estate through ignorance or mistake·
    as to character and value of its betterments or fixtures, the error in
    valuation should be corrected by the board of equalization, and can not
    be corrected by the auditor of the county under section 35 of the·
    said act.

MOTION for leave to file a petition in error to the Superior·
Court of Cincinnati.

The original action was brought by the defendant in er--
ror against the plaintiff in error to restrain the assessment
of certain taxes. An injunction was granted by the court
below.

The case briefly stated is this: The Lafayette Bank being·
the owner of a certain lot in the city of Cincinnati, with a
banking-house thereon, in the year 1867, granted a per-
petual lease of the west half thereof to the defendant in
error, in consideration of an annual rent and the payment
of one-half the taxes assessed against the lot and building.

In 1868, the Safe Deposit Company, at a cost of about
$44,000, erected a safe on the leased premises, in such man-
ner as to make it a fixture or betterment of the realty.

In 1870, the district assessor, in the decennial valuation
of real estate for taxation, valued the whole of this lot, in
the name of the Lafayette Bank, at $55,000. This valua--
tion was afterward, through the action of the decennial
county and state boards of equalization, reduced to the sum
of $31,900. Upon this reduced valuation taxes were paid
by the Lafayette Bank and the Safe Deposit Company, in
accordance with the terms of the lease, until the year 1874,
at which time the plaintiff in error, as auditor of Hamilton
county, having ascertained that the safe, so erected by the
defendant in error, had never been valued for taxation,.
either as a betterment of the real estate or otherwise, noti-

fied the defendant in error of his intention to place the same upon the tax duplicate for taxation at a valuation of $30,000.

It is conceded that the·safe in question is a permanent· fixture and betterment of the leasehold estate, of which fact, however, it seems, the district assessor, in 1870, as well as the boards of equalization, which reduced the valuation, were ignorant.

It is now alleged for error, that the court below enjoined the auditor from placing the safe upon the duplicate for taxation.

*Forrest, Cramer & Mayer*, for the motion.
*Hagans, Broadwell & Hyman*, contra.

McILVAINE, J. The state constitution provides that "laws shall be passed, taxing by a uniform rule . . . all real and personal property according to its true value in money." Such laws have been passed; and yet the real estate of the defendant in error, of which its safe is a part, is not taxed according to its true value in money. Here is a public wrong, which, confessedly, should be remedied. That there is a remedy provided by law is not doubted, but it is made a question whether the mode and manner of remedy proposed by the auditor are authorized by the statute. For his authority the auditor relies upon section 35 of the tax law of April 5, 1859, which provides that "each county auditor shall, from time to time, correct any errors which he may discover in the name of the owner, in the valuation, description, or quantity of any tract or lot contained in the list of real property in his county."

The language of this section would seem broad enough to authorize the proposed action of the auditor; but when considered in connection with other provisions, and as part of the scheme developed by the whole statute, we think the court below was right in holding that the auditor was without authority in the premises.

If the facts in relation to the improvement, and valuation of this property by the district assessor, had been brought to the notice of the decennial board of equalization, organized in and for the city of Cincinnati, under section 40 of the act as amended May 8, 1868 (S. & S. 753), it would have been the duty of the board to have raised the valuation of the property to its true value in money. The decennial board, however, having failed to correct the mistake of the assessor, another provision is made for its correction, in section 45 of the same amendatory act, by the annual board of equalization.

The facts stated in this record, we think, make a case for the action of the board of equalization, and not for correction by the auditor under section 35. It is not necessary, nor would it be safe to attempt, to define cases in which the auditor is authorized by the provisions of this section to correct errors; but we can safely say that his authority does not extend to subjects, which the statute places under the control of boards of equalization. One of the duties of such boards is thus prescribed in the statute : " 1. They shall raise the valuation of such tracts and lots of real property as, in their opinion, have been returned below their true value, to such price or sum as they believe to be the true value thereof," etc.

It seems to us that the legislative intent was to place the correction of any error in the judgment of assessors as to the valuation, under the sole supervision of boards of equalization, whether such erroneous judgment was induced by ignorance or mistake either of law or fact.

In this case the safe of defendant in error was not the subject of a separate valuation. It could only be valued with and as part of the real estate. The real estate of which it was a betterment was valued by the assessor, and the valuation thus made was truly returned by him. It is true that the property was underrated by reason of the ignorance or mistake of the assessor as to the character of its improvements, thus presenting a clear case for the board of

equalization to " raise the valuation," but not a case for correcting the valuation by the auditor under section 35.

*Motion overruled.*